IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BETH KENDALL,                              )
                                           )
                Plaintiff,                 )   Civil Action No. 2:10-cv-1209
        v.                                 )
                                           )   Judge Mark R. Hornak
PATRICK R. DONAHOE, Postmaster             )
General, United States Postal Service,     )
                                           )
                Defendant.                 )

## OPINION

**Mark R. Hornak, United States District Judge**

This tale began on February 16, 2007, when Beth Kendall, a former part-time postal worker, filed a workers' compensation claim for an injury she allegedly sustained while shoveling snow outside the Pulaski, Pennsylvania United States Post Office. Ms. Kendall believes that it should end with a jury trial in federal court, claiming that her discharge was in unlawful retaliation for her engaging prior protected activity under the Rehabilitation Act, 29 U.S.C. 701 *et seq.* Currently before the Court is Defendant United States Postal Service's ("USPS") Motion for Summary Judgment, ECF No. 134.[1] The parties have extensively briefed this Motion, and the Court's deliberations have been materially aided by the oral argument presented by all counsel. For the reasons that follow, Defendant's Motion is granted.

---

[1] Defendant's principal bases for its summary judgment motion were that the relevant decisionmakers did not have knowledge of Ms. Kendall's allegedly protected activity, *see Iver v. Everson*, 238 F. App'x 834, 837 (3d Cir. 2007), and that in any event, Ms. Kendall could not adduce record evidence sufficient to create a jury issue as to whether the reasons advanced by Defendant for her dismissal were pretextual and that the real cause of her employment loss was an unlawful one. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d. Cir. 1994). Given the statutory basis for the Court's decision here, it need not, and does not, address those arguments.

I.  BACKGROUND

While the parties contest many matters related to Ms. Kendall's employment, the relevant material facts of this case are straightforward and undisputed. Ms. Kendall was hired by the USPS in 2003 and took on the position of a part-time flexible Sales & Service Distribution Associate (SSDA) at the Pulaski, Pennsylvania Post Office. Def.'s Stmt. Mat. Facts ¶ 1, ECF No. 136. On February 14, 2007, Ms. Kendall allegedly suffered a back injury while shoveling snow outside the front door of that Post Office. Def.'s Supp. Stmt. Mat Facts ¶ 189, ECF No. 151. She filed a federal Workers' Compensation Claim on February 16, 2007 for that injury. App'x Def.'s Suppl. Br. Supp. S.J. Ex. 69, ECF No. 152.

On December 31, 2007, Ms. Kendall filed an EEOC Charge of Discrimination against the USPS, alleging that the USPS had taken a number of actions against her in "retaliation/discrimination/harassment for the filing of my OWCP claim for my on the job injury while shoveling snow at the Pulaski office on 12-14-07." App'x Def.'s Mot. S.J. Ex. 8 at 6, ECF No. 137; *see id.* at pp. 4, 6-8 of 11. The "OWCP claim" was her workers' compensation claim. On that EEOC Charge form, Ms. Kendall did not check any of the pre-printed boxes for "Type of Discrimination," which were Race, Color, Religion, National Origin, Sex, Age, Retaliation, and Disability, but she instead hand-wrote "See attached documentation." *Id.* at p. 3 of 11. Prior to submitting that Charge, Ms. Kendall filled out two "Information for Pre-Complaint Counseling" forms, in which she also wrote that she felt she was being "retaliated/harassed for the filing of my worker's comp claim," ECF No. 152 Ex. 70, Ex. 71. In none of her EEOC forms did Ms. Kendall indicate any other basis for which she perceived that she received discriminatory treatment at the hands of her employer, the USPS, nor did she detail any ongoing

physical or mental impairment. At that point, Ms. Kendall had never had any prior activity with the EEOC. *See id.* Ex. 70 at Block E; Ex. 71 at Block E; Ex. 78 at p. 1 of 39.

On January 11, 2008, the EEOC allowed Ms. Kendall to proceed on a claim for "discrimination based on Retaliation (for prior EEO activity)." Partial Acceptance/Partial Dismissal of Formal EEO Complaint, *id.* Ex. 75 at 2. That report noted that while on its face the Charge only claimed retaliation for the filing of a workers' compensation claim, the investigator was under the impression that the "complaint also indicates retaliation for EEO activity," which would need to be clarified "during the course of the investigation." *Id.* at 1 n.1. In her subsequent filings regarding that investigation, on February 21, 2008, Ms. Kendall again informed the EEOC that she did not in fact have any EEO activity prior to her initial 2007 contact related to her workers' compensation claim. *Id.* Ex. 78, p. 1 of 39.

On March 3, 2009, the EEOC ordered the USPS to submit answers to Ms. Kendall's discovery requests in the Charge investigation. Because the USPS never submitted those answers or responded to a follow-up show cause order, EEOC Administrative Judge Elliott Porter sanctioned the USPS by awarding Ms. Kendall a "Default Judgment" on her Charge on May 12, 2009. ECF No. 137 Ex. 10. Although Ms. Kendall thus prevailed on that basis, the merits of her claims against the USPS were never reached. *See id.* On September 22, 2009 Judge Porter issued a ruling as to the damages the USPS would have to pay Ms. Kendall, Pl.'s App'x Br. Opp. Mot. Ex. R, ECF No. 140, which the USPS accepted in its "Notice of Final Action" on December 4, 2009, *id.* Ex. T.

In the meantime, Ms. Kendall's tempestuous employment relationship with the USPS continued until December 11, 2009, when she was removed from her position because the USPS charged that she had improperly opened mail addressed to the "Postmaster" and had then stolen

mail addressed to the "Postmaster" on November 28, 2009.[2] On October 2, 2009, Ms. Kendall had also initiated the process of filing a second EEOC Charge by filing Pre-Complaint grievances with the EEOC, alleging that she was the victim of harassment in retaliation for her 2007 EEOC activity. Pl.'s Counter-Stmt. Mat. Facts ¶ P-10-11, ECF No. 138. After her termination, Ms. Kendall filed a second EEOC Charge on February 28, 2010, alleging harassment and discharge "in retaliation for my prior EEO activity," citing only her 2007 EEOC case. ECF No. 137 Ex. 9. at p. 8 of 140, Q#4. After receiving a right to sue letter from the EEOC for the second (February 28, 2010) charge, Ms. Kendall filed suit in this Court on September 14, 2010, alleging that the USPS terminated her in unlawful retaliation for her prior "protected activity," in violation of Title VII, 42 U.S.C. § 2000e-2(m), and the Rehabilitation Act, 29 U.S.C. 701 *et seq.* Am. Compl. ¶¶ 3, 8, 10, ECF No. 12.[3] Plaintiff asserts as the protected activity for which she was terminated both the 2007 EEOC Case ("2007 EEOC Case") and her October 2009 activity surrounding the second EEOC Charge ("2009 EEOC Case"). *See* Pl.'s Counter-Stmt. Mat. Facts ¶ 18, ECF No. 138.

---

[2] Ms. Kendall has admitted that on that date, she opened mail that was addressed to the "Postmaster" (who was Ms. Teri Fetzner). Kendall Dep. Jan. 26, 2012 at 156-58, ECF No. 137 Ex. 1. When she discovered that one such letter discussed her own poor work performance, she admits that she made a copy of it "for [her] protection . . . just to have a paper trail for myself. . ." Unempl. Comp. Hr'g Tr., Mar. 5, 2011 at 12-13, ECF No. 140 Ex. P; *see* Kendall Dep. at 156. The parties contest (1) whether Ms. Fetzner had previously provided Ms. Kendall with an explicit verbal warning not to open mail addressed to "Postmaster"; (2) whether once Ms. Kendall made a copy of the letter, she replaced that (illegible) copy in the envelope and took the original home with her, or whether she left the original and took the copy home with her; and (3) whether Ms. Kendall at a disciplinary meeting on December 10, 2011, in the presence of several meeting participants, admitted that she had taken the original letter home. *See* Pl.'s Br. Opp. S.J. at 10-11, ECF No. 139; ECF No. 137 Ex. 27 (copy of letter). Ms. Kendall's own statements as to this second fact are at best inconsistent, and at worst constitute an admission that she took the original home or left it in her desk drawer. *Compare* ECF No. 140 Ex. P at 15 ("I left a copy for [Fetzner] to see") *with* Kendall Dep. at 156 ("I do not know whether I took that [original] letter home with me"). Whether or not Ms. Kendall took the original and left a copy, or took a copy and left the original, no party has advanced any justification or authorization for her actions in retaining either a copy or the original under statute, regulation, or policy.

[3] In her Amended Complaint, Ms. Kendall alleged both retaliatory harassment and retaliatory discharge. However, Plaintiff agreed to withdraw any claim based on alleged retaliatory harassment in her Brief in Opposition to Defendant's Motion for Summary Judgment, ECF No. 139 at 2, and any claim under Title VII in her Reply to Defendant's Supplemental Brief in Support of Summary Judgment, ECF No. 154 at 3, leaving only the retaliatory discharge claim under the Rehabilitation Act. That is the sole remaining claim before the Court.

Defendant now moves for summary judgment, asserting among other things that Ms. Kendall's charges must fail as a matter of law because she did not engage in statutorily "protected activity." Plaintiff, in response, concedes that she does not have a valid Title VII retaliation claim because her claims did not originate with alleged discrimination on the basis of race, color, gender, national origin, or religion. But she asserts that her Rehabilitation Act retaliation claim is still valid, because "the initial discrimination arose out of her physical and mental disability, which is a protected class under the Rehabilitation Act" as evidenced by "Defendant's extensive discovery of Plaintiff's physical and mental health records, and the extensive testimony regarding Plaintiff's various leaves of absence and whether she supplied the proper documentation regarding those requested leaves." Pl.'s Reply Def.'s Suppl. Br. Supp. Mot. S.J. at 3, ECF No. 154. Therefore, all that remains in this case is a single count alleging retaliatory termination in violation of the Rehabilitation Act. The question presented to the Court is whether Ms. Kendall engaged in the requisite "protected activity" under the Rehabilitation Act necessary to assert a claim of retaliation.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001).

## B. Retaliation under the Rehabilitation Act

The Rehabilitation Act, 29 U.S.C. § 701 *et seq.* requires a federal employer or an employer who receives federal funding to comply with the standards set forth in the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq. Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996). Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, incorporates by reference the substantive standards of the ADA, 42 U.S.C. §§ 12201-04, 12210. First, the ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability," 42 U.S.C. § 12112, a prohibition that includes failing to reasonably accommodate such individuals. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 191 (3d Cir. 2009).[4]

Second, § 503(a) of the ADA prohibits retaliatory discrimination:

> No person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this chapter*.

42 U.S.C. § 12203(a) (emphasis added). Third, Third Circuit has also held that it is unlawful to retaliate against an employee for making a good faith request for an accommodation, even if that employee is not "disabled" under the ADA. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).[5] "Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others."

---

[4] The applicable definition of "disability" is set forth at 42 U.S.C. § 12102(1). Ms. Kendall has advanced no record evidence that would demonstrate that she fell within such definition. The sole focus of each and every one of her 2007 Charges was alleged retaliation for filing her "OWCP Claim." ECF No. 137 Ex. 8.

[5] In reaching its holding, the *Schellenberger* court relied on the First Circuit's opinion in *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997), which noted that while a non-disabled individual requesting an accommodation would seem to fall outside the statutory language of the ADA (because he is not opposing or participating against any activity made unlawful by the ADA), such conduct is nevertheless protected activity, because, "it would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge." *See Schellenberger*, 318 F.3d at 190.

6

*Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). Like Title VII, the ADA's anti-retaliation provision consists of an "opposition clause" and a "participation clause." *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009).

Under Title VII and the ADA, a plaintiff's prima facie case of retaliation must establish (1) that she engaged in "protected activity," (2) that she suffered a materially adverse action, and (3) that there is a causal connection between the adverse action and the protected activity. *Fogleman*, 283 F.3d at 567; *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997). In *Slagle v. County of Clarion*, 435 F.3d 262, 268, the Third Circuit held that filing an EEOC Charge itself was not protected activity under Title VII's anti-retaliation provision where that Charge facially did not allege a violation of Title VII's substantive anti-discrimination provisions.

In *Slagle*, the plaintiff had filed an EEOC Charge in 2001 against his employer alleging discrimination "because of whistleblowing, in violation of [his] Civil Rights, and invasion of privacy," and then asserted in a second 2002 EEOC Charge that he was discharged from his position in retaliation for his filing the 2001 Charge. *Id.* at 263-65. The Third Circuit took on the question of "whether the participation clause of section 704(a) [of Title VII] protects an employee who files a facially invalid claim for retaliatory discharge," and answered it in the negative. *Id.* at 266. The court reasoned that to hold "that an employee is protected when s/he files any charge, regardless of its content, is to render the phrase 'under this subchapter' meaningless. Such an interpretation is contrary to the accepted rules of statutory interpretation." *Id.* at 267. It further elaborated, "Once a plaintiff files a facially valid complaint, the plaintiff will be entitled to the broad protections of § 704(a) . . . . All that is required is that a plaintiff allege in the charge that his or her employer violated Title VII by discriminating against him or

her on the basis of race, color, religion, sex, or national origin, in any manner." *Id.* at 268. A charge alleging "unspecified civil rights violations," *id.* at 265, did not meet that "low bar," *id.* at 268.[6]

Because the Third Circuit's interpretation of Title VII's retaliation provision is equally relevant to the interpretation of the ADA's nearly-identical provision, *Fogleman*, 283 F.3d at 567, the statutory analysis in *Slagle* applies with equal force to this case.[7] It follows that under *Slagle*, Ms. Kendall's 2007 EEOC Case could constitute protected activity under the Rehabilitation Act only if she made a facially valid complaint of discriminatory retaliation in violation of the ADA/Rehabilitation Act.

In her 2007 EEOC Charge, Ms. Kendall alleged *only* that she was retaliated against for filing a workers' compensation claim in February 2007. *See* ECF No. 137 Ex. 8; ECF No. 152 Ex. 70, 71. Alleging retaliation for filing a workers' compensation claim does not constitute a facially valid ADA complaint. As noted above, the ADA makes it unlawful for an employer (1) to "discriminat[e] against a qualified individual with a disability because of their disabilities, a prohibition that includes failing to reasonably accommodate such individuals," *Hohider*, 574 F.3d at 191 (citing 42 U.S.C. § 12112); (2) to discriminate against any individual for opposing or participating in a charge against the employer for engaging in an unlawful practice, that is, opposing an employer engaging in (1), 42 U.S.C § 12203(a); or (3) to retaliate against an employee for making a good faith request for an accommodation, *Shellenberger*, 318 F.3d at 191.

---

[6] Our Court of Appeals noted that its holding was in accord with decisions of two of its sister circuits. *See Slagle*, 435 F.3d at 267 (citing *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988); *Balazs v. Liebenthal*, 32 F.3d 151, 159-60 (4th Cir. 1994)).

[7] Title VII's anti-retaliation provision reads that an employer may not "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this chapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000e-3(a).

8

Filing a workers' compensation claim in and of itself does not make an employee a "qualified individual with a disability." While employees who are injured on the job might be "qualified individuals with a disability" under the meaning of the ADA, they just as easily might not be. It does not then follow that simply because one has filed a workers' compensation claim, she is "disabled" within the meaning of the ADA, nor that an employer who takes an adverse action against an employee in retaliation for filing that workers' compensation claim does so on the basis of a qualifying disability, and not because of the fact of the claim itself. As is discussed further below, Ms. Kendall herself gave no indication in her EEOC Charge of mistreatment "for filing my worker's comp claim" that she believed she was in fact being mistreated because of a disability.

It is apparent that filing a workers' compensation claim after an injury is also not in and of itself opposing any unlawful activity of an employer – it is the seeking of benefits for an on-the-job injury. Nor is there any principled reason to extend the reach of the statute to consider filing a workers' compensation claim a "protected activity" in the same way as requesting a reasonable accommodation. Reasonable accommodations are enshrined as part of the core framework of the ADA, *see* 42 U.S.C. § 12112; receiving workers' compensation for an on-the-job inquiry is plainly *not* a part of the ADA (though it plainly *is* the crux of the federal and state workers' compensation statutes). Therefore, there is no statutory basis to find that filing for workers' compensation benefits is "protected activity" under the ADA.

Nearly every court that has confronted the issue has held that the filing of a workers' compensation claim in itself is not protected activity under the ADA – in other words, that an ADA-based claim of retaliation for the filing of a workers' compensation claim cannot stand. *See Fieni v. Franciscan Care Ctr.*, CIV.A. No. 09-5587, 2011 WL 4543996, at *7 (E.D. Pa. Sept. 30,

9

2011) ("The Third Circuit has not yet addressed whether the application for or receipt of workers' compensation benefits is protected activity under the ADA, but a plain reading of the statute suggests that it is *not* protected activity."), *id.* at *7 n.76 (collecting cases from the First, Second, Fifth, and Tenth Circuits); *Leavitt v. SW&B Construction Co.*, 766 F. Supp. 2d 263, 286 (D. Me. 2011) ("while being retaliated against for filing a workers' compensation claim could certainly constitute a cause of action under state law, it does not constitute protected activity under the ADA") (citation omitted). *But see Munoz v. Baltimore Cnty.*, Civ. A. No. RDB-11-02693, 2012 WL 3038602, at *10 (D. Md. July 25, 2012) (allowing similar claim to proceed past motion to dismiss stage). For the reasons stated above, this Court agrees with the reasoning of the overwhelming majority of courts that hold that the application for or receipt of workers' compensation benefits is not itself protected activity under the ADA.

This is not the type of case in which a Plaintiff misses the mark because she does not skillfully couch in the precisely right language a violation of the appropriate federal statutory provision.[8] *See Slagle*, 435 F.3d at 268. Although Defendant's counsel in his briefing argues that "the initial discrimination arose out of her physical and mental disability," ECF No. 154, at 3, there is no factual basis in the record to support this contention. *All* of Ms. Kendall's paperwork surrounding her 2007 EEOC Charge is uniform that she believed she was discriminated against "for filing [her] workers' comp claim." ECF No. 152 Ex. 70, 71; *see* ECF No. 137 Ex. 8. She did not check any box indicating "disability" as a basis for discrimination, or otherwise reflect in the record that an ADA-covered disability had anything to do with what she

---

[8] At various times in this proceeding, Ms. Kendall has been represented by counsel, and at other times she was not, including periods when portions of the factual discovery-based record were developed. Nonetheless, as to the briefing and argument in opposition to Defendant's Motion for Summary Judgment, she has been ably represented by highly-experienced counsel, allowing her to put her best foot forward in advocating the validity of her claim with vigor and zeal.

10

perceived to be retaliation. There is no reason to conclude that Ms. Kendall in her EEOC Charge believed she was the victim of discrimination on account of a perceived or actual disability.[9] As discussed above, the Court is not willing to hold that an assertion of retaliation for filing a workers' compensation claim is *sub silentio* a broader claim of discrimination on the basis of disability in violation of the ADA. Therefore, like the plaintiff in *Slagle*, Ms. Kendall's filing of an EEOC Charge in 2007 for a facially invalid claim of federal disability discrimination did not constitute protected ADA or Rehabilitation Act activity,[10] and cannot form the basis of a claim of retaliatory discharge.[11] *See also Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir.

---

[9] While Plaintiff's counsel is correct in indicating that Ms. Kendall's physical and mental health was at one point in this action the source of significant litigation sparring, such health inquiries were only ever relevant as to whether the Defendant allegedly treated Ms. Kendall disparately when it denied some of her sick leave claims or whether she suffered harm as a result of the disparate treatment, and *not* as the underlying basis for which she was allegedly discriminated against, which Ms. Kendall has consistently averred was her prior protected EEO activity. *See, e.g.*, Am. Compl. ¶ 8 (describing prior EEO activity as "protected activity"), ¶ 9 (listing as "acts of disparate treatment/harassment" denial of sick leave); Pl.'s Br. Opp. S.J. at 4-6, ECF No. 139; ECF No. 154 at 4 ("the [Administrative Judge's] Notice of Decision discusses in detail the mental disability suffered by Plaintiff *as a result of* Defendant's discriminatory conduct") (emphasis added).

[10] It is for this same reason that even if the Court did not construe Plaintiff's concession in her latest brief that she does not have a valid Title VII claim, ECF No. 154 at 4, as a waiver of that claim, Ms. Kendall also could not make out a Title VII discrimination case as a matter of law, because her underlying 2007 EEOC Charge did not allege discrimination on the basis of race, color, religion, sex, or national origin.

[11] The Third Circuit has also used language slightly different from *Slagle*'s "facially valid" wording in discussing whether an employee's activity meets the standards for the participation or opposition clause: "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore v. City of Phila.*, 461 F.3d 331, 341, 344 (3d Cir. 2006). Thus far, courts in this Circuit have appeared to use each phrasing of the standard in cases like this one, where a plaintiff either alleges discrimination on a basis that is facially unprotected by law, or generically alleges discrimination without reference to a protected status. *Compare Fleeger v. Principi*, 221 F. App'x 111, 115 (3d Cir. 2007) ("no reasonable person could have believed that the underlying incidents Fleeger complained of [discrimination because of diabetes] violated Title VII") (citing *Moore*) *with Sampath v. Concurrent Technologies Corp.*, CIVA 3:03-CV-264, 2008 WL 868215, at *45 (W.D. Pa. Mar. 31, 2008), *aff'd*, 299 F. App'x 143 (3d Cir. 2008) ("the core requirement, that the complainant actually allege that the claimed discriminatory act is the result of a protected characteristic of the complainant, was not satisfied in this case" when plaintiff made only unspecified allegations of discrimination) (relying heavily on *Slagle*). This Court believes that whatever difference may theoretically exist between *Moore*'s "objectively reasonable" and the *Slagle* "facially valid" formulations, as they apply to the scenario where a plaintiff either alleges discrimination on a basis that is facially unprotected by law, or generically alleges discrimination without reference to a protected status, it is an entirely semantic one. Thus, for the same reasons the Court articulated above that Ms. Kendall's EEOC charge of retaliation for filing a workers' compensation claim was facially invalid under the ADA, the Court concludes that it would also have been objectively unreasonable for her to conclude that such a claim falls under the anti-retaliation provisions of the ADA.

1995) (employee's letter to Human Resources that did not specifically complain about age discrimination did "not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation" under ADEA's opposition clause).[12]

Although there remain two record facts in this case that differ from those in *Slagle*, for two similar reasons, neither alters the outcome here.

### *1. Prevailing on an EEOC Charge*

In *Slagle*, when the Plaintiff filed an initial EEOC Charge for "unspecified civil rights violations," his charge was dismissed by the EEOC for failure to state a claim. 435 F.3d at 263. In contrast, Ms. Kendall was (oddly enough) permitted to go forward with her claim, and was awarded a "default judgment" based on her initial workers' compensation-based EEOC Charge.

First, it is worth noting that Ms. Kendall's charge was never addressed on the merits by the Administrative Judge, and that at least one EEOC official during the investigatory process of it indicated his concern that Ms. Kendall did not allege the statutorily-protected activity necessary to assert a valid claim of unlawful retaliation.[13] Moreover, the determinations of Administrative Judge Porter, which the USPS elected to adopt in its Notice of Final Action,[14] are in no way binding on this Court in this case under res judicata, collateral estoppel,[15] or any

---

[12] While formal EEOC charges and processes fall properly under the participation clause and not the opposition clause, *see Slagle*, 435 F.3d at 266, because the participation clause's protection is even broader than that of the opposition clause, *id.* (citing *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003)), it follows *a fortiori* that any opposition clause claim Ms. Kendall might have had must also fall alongside her participation clause claim, and it also must fail directly under *Barber*, 68 F.3d at 701-02.

[13] *See* "Partial Acceptance/Partial Dismissal of Formal EEO Complaint," ECF No. 152 Ex. 75 at 1 n.1. "It is noted that Complainant avers to retaliation regarding the filing of worker's compensation claim but in the narrative portion of her complaint also indicates retaliation for EEO activity. Complainant will be required to specifically identify the protected activity for which she is alleging retaliation during the course of the investigation." It also appears that the investigator was under the mistaken impression that Ms. Kendall had engaged in EEOC activity prior to 2007.

[14] *See* 29 C.F.R. § 1614.110.

[15] It should be noted that this result is consistent with the general rule that the entry of a default judgment particularly as a result of a procedural default akin to that present in the administrative proceeding involving Ms.

doctrine of administrative agency deference. "[W]hen a federal employee comes to court [under the Rehabilitation Act] to challenge . . . the administrative disposition of his or her discrimination claims, the court must consider those claims *de novo*." *Morris v. Rumsfeld*, 420 F.3d 287, 294 (3d Cir. 2005) (citing *Chandler v. Roudenbush*, 425 U.S. 840 (1976)); *see Rosenfeld v. Dep't. of Army*, 769 F.2d 237, 239-40 (4th Cir. 1985). Therefore, the administrative determinations below do not themselves provide a reason why receiving a "default judgment" by an administrative judge sublimated Ms. Kendall's facially invalid EEOC Charge into protected activity under the Rehabilitation Act.[16]

More importantly, the language of the participation clauses of the ADA and/or Title VII suggests no reason why *initiating* a facially invalid EEOC Charge would not constitute protected activity, but *prevailing* (at least in some fashion) on one would. *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual . . . participated in any manner in an investigation, proceeding, or hearing under this chapter."). The statute prohibits retaliation for all forms of "participation" equally, but it is apparent that all must occur "under this chapter." Whether a plaintiff was awarded a default judgment on an EEOC Charge, or whether that EEOC Charge was dismissed at an earlier stage, does not alter the fact that her participation in a case alleging a facially invalid charge of discrimination failed to occur "under this chapter" from the very start. Therefore, the fact that Ms. Kendall managed to prevail in her 2007 EEOC Case on procedural default grounds does not convert her conduct as to her workers'

---

Kendall's 2007 Charge is not deemed to result in issue or fact preclusion. *Wilson v. Reliance Ins. Co.*, 138 F. App'x 457, 459 (3d Cir. 2005).

[16] Nor would the result be any different if either Ms. Kendall or the USPS had appealed the Administrative Judge's determination to the EEOC, which then issued a final Commission decision, before Ms. Kendall filed the instant litigation. *See Morris*, 420 F.3d at 292-94.

13

compensation claim into the requisite "protected activity" under either the ADA or the Rehabilitation Act.

## 2. *Retaliation for a Second EEOC Charge*

As discussed above, *Slagle* involved termination in retaliation for engaging in prior protected activity (filing a 2001 EEOC claim), which was participation in a claim of discrimination. 435 F.3d at 263-64. Ms. Kendall alleges that when she was terminated on December 11, 2009, her employer retaliated against her not only for her prior protected activity of filing the 2007 Charge, but also for initiating EEOC proceedings in October 2009 with a *second* EEOC Charge (which at that time included various assertions of retaliatory harassment). To lay out that second claim, Ms. Kendall alleges that she was terminated in December 2009 in retaliation for engaging in prior protected activity (October 2009 EEOC Activity), which activity was her participation in a claim alleging retaliation for prior protected activity (December 2007 EEOC Charge), namely participation in a claim alleging retaliation for prior protected activity (February 2007 Workers' Compensation Claim).[17] Therefore, in this regard, this case is *Slagle* with yet another exponential layer of alleged retaliation.

But again, there is no language in the participation clause of the ADA (or Title VII) to suggest that what starts out as wholly unprotected activity can somehow become protected activity via persistence in piling on layers of claimed retaliation, each nonetheless having its genesis in a facially invalid disability charge. *See, e.g., Leavitt*, 766 F. Supp. 2d at 286 ("If filing a workers' compensation claim is not ADA protected activity, it is not ADA protected activity to testify to support a claim."); *Slagle*, 435 F.3d at 266. To hold otherwise would allow (and perhaps encourage) an employee to file an EEOC charge of discrimination on an entirely invalid

---

[17] "If you need to take a deep breath after all that, you're not alone." *Kloeckner v. Solis*, 11-184, 2012 WL 6097022, at *8 (U.S. Dec. 10, 2012) (Kagan, J.)

14

ground, and then, as long as she goes back to the EEOC two or more times alleging subsequent layers of retaliation with the same invalid starting point, imbue her with the robust statutory protections of the participation clause.

In *Slagle*, our Court of Appeals acknowledged, and this Court recognizes, that the remedial measures provided by Title VII are a reason to interpret that statute liberally. 434 F.3d at 267. It also noted that the reach of the "exceptionally broad protections of the participation clause" of Title VII importantly and appropriately extends beyond that of its opposition clause, and even to those who are wrong on the merits of their Charge. *Id.* at 266, 268. But that court also drew a bright line in holding that a facially invalid EEOC claim does not constitute protected participation "under this chapter," a holding that dictates the outcome of this case. Because Ms. Kendall did not engage in statutorily "protected activity" under the ADA, and hence the Rehabilitation Act, she cannot successfully assert her remaining claim for relief under the Rehabilitation Act, and Defendant's Motion for Summary Judgment will be granted.

An appropriate order will follow.

Mark R. Hornak
United States District Judge

Dated: December 21, 2012

cc: All counsel of record

15